UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Elexander Adkinson,<br><br>                                    Plaintiff,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>Norfolk & Portsmouth Belt Line Railroad Co.,<br><br>and<br><br>Norfolk Southern Railway Corp.,<br><br>                                    Defendants. | Case No. 2:26-cv-00071-RBS-LRL<br><br>**AMENDED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

**INTRODUCTION**

1.      For reasons unique to the industry, railroads have a financial incentive to discourage employees from reporting the injuries they suffer, blame them for whatever injuries they nevertheless report, and then manufacture a reason to terminate them. *See*, *e.g.*, *Report of Majority Staff of the Committee on Transportation and Infrastructure Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure*, 110th Cong. (Oct. 22, 2007). Because carriers have a long history of acting on this motive, Congress amended the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"), adding new prohibitions against railroads, providing employees a private right of action in federal court, and relaxing the standards of proof for retaliation claims. *See*, *e.g.*, *The Implementing Recommendations of the 9/11's Comm. Act of 2007*, P. L. 110-53, 121 Stat. 444 (Aug. 3, 2007). Courts have recognized that these amendments were intended "to ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers." *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013)

(quoting H.R.Rep. No. 110–259 at 348 (2007) (Conf.Rep.), 2007 U.S.C.C.A.N. 119, 181) (quotation marks omitted).

2.        Defendants have a history of retaliating against employees who report injuries, which has continued after Congress amended the FRSA. This includes against Elexander Adkinson, who lost his job because of these illegal practices. After his lawyer filed a workers' compensation claim for him, Defendants terminated him, claiming he should have reported the injury underlying his claim sooner.

3.        In addition to the FRSA, Defendants' conduct violates Va. Code § 65.2-308, which prohibits retaliation against employees who file workers' compensation claims.

## PARTIES

4.        Adkinson resides and worked for Defendants in this District.

5.        CSX Transportation, Inc. is a freight railroad, providing service across the Eastern United States, including in this District.

6.        Norfolk Southern Railway Corp. is a freight railroad, providing service across the Eastern United States, including in this District.

7.        Norfolk and Portsmouth Belt Line Railroad is a terminal switching company that connects commerce between Sewells Point and Portsmouth Marine Terminal in Virginia. It is owned and operated by CSX and Norfolk Southern.

## JURISDICTION AND VENUE

8.        This Court has original jurisdiction over Adkinson's FRSA claims under 28 U.S.C. § 1331, and diversity and pendant jurisdiction over his state claims under 28 U.S.C. § 1332 and 28 U.S.C. § 1367, respectively.

9.        Venue is proper in this district because this District is where Adkinson worked for Defendants, reported his injury, and was retaliated against.

## FACTUAL ALLEGATIONS

10.     Norfolk and Portsmouth Belt Line Railroad is owned and operated by Norfolk Southern and CSX.

11.     Work schedules, pay rates, etc. at Portsmouth Belt Line Railroad are set by officers of Norfolk Southern and CSX.

12.     Officers of Norfolk Southern and CSX are responsible for supervising the performance of work by Portsmouth Belt Line Railroad's employees, and the hiring/firing decisions are also made by officers of Norfolk Southern and CSX.

13.     Portsmouth Belt Line Railroad requires its employees to comply with Norfolk Southern and CSX policies.

14.     For these reasons, while Adkinson worked for Norfolk and Portsmouth Belt Line Railroad, his employment was controlled by Norfolk Southern and CSX.

15.     Until the incident at issue in this case, Adkinson was considered a model employee by all the different officers who controlled his employment.

16.     That changed on February 9, 2024, when Adkinson filed a workers' compensation claim under Va. Code Ann. § 65.2.

17.     The filed claim was forwarded to Defendants, who responded by accusing Adkinson of a workplace rule violation for not reporting the injury underlying the claim sooner, held an internal hearing, and terminated him.

18.     The hearing was pursuant to Adkinson's union's collective bargaining agreement with Defendants, which entitles craft-level employees to a hearing before they can be disciplined.

19.     The hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined. Instead, the hearings operate as a perfunctory means to assign blame to employees regardless of their actual responsibility for

3

workplace rule violations. Hearing officers, who function as both prosecutor and judge, are members of management who are appointed by the company. Hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply; and employees are frequently found responsible based entirely on hearsay. The company can compel witnesses to appear, but employees cannot. The company may conduct an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence— to the employee charged. And the hearings typically take less than one day. It is well known that these hearings almost always are decided in favor of the railroad.

20.     Adkinson's hearing was held on April 25, 2024.

21.     Thirty days later, Adkinson was terminated by Defendants.

22.     The decision to terminate Adkinson was made by officers of each of Defendants, pursuant to CSX and Norfolk Southern policies.

23.     The injury at issue in the claim was not something Adkinson had to report to Defendants under its workplace rules, *i.e.*, Adkinson did not actually violate any rule regarding the reporting of injuries.

24.     Within 180 days of his termination, on August 26, 2024, Adkinson filed a complaint with the Department of Labor (DOL), alleging that he had been retaliated against for reporting an injury, in violation of the FRSA.

25.     After 210 days passed without the DOL issuing a final order, Adkinson removed his claim to this Court.

26.     The DOL's failure to issue a final order was not due to bad faith on Adkinson's part.

27.     In addition to the FRSA claim, Adkinson brings a claim under Va. Code § 65.2-308, which prohibits retaliation against employees who file workers' compensation claims.

28.     Adkinson is not actually eligible for workers' compensation under Va. Code § 65.2 and is instead entitled to seek compensation for work-related injuries under the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51 *et seq*.

29.     Although railroads are exempt from Va. Code § 65.2 insofar as it governs how employees are compensated for their injuries, courts in analogous cases have held they are not exempt from the Code's antiretaliation provision, *i.e.*, Va. Code § 65.2 prohibits railroads from retaliating against employees who file claims under it even if their claims are invalid. *Ungerbuehler v. Kelly*, 2026-Ohio-436, ¶ 55 (anti-retaliation protection turns on the employer's response to the employee's pursuit of benefits, not on whether the employee would ultimately recover benefits); *Hysten v. Burlington N. Santa Fe Ry. Co.*, 277 Kan. 551, 108 P.3d 437, 443-44 (2004) (recognizing a tort claim for retaliatory discharge when a railroad fires an employee for exercising FELA rights); *Herrera v. San Luis Cent. R.R. Co.*, 997 P.2d 1238, 1241 (Colo. App. 1999) (same).

## DEFENDANTS' RETALIATORY MOTIVE

30.     Congress has explicitly said that "[t]he underreporting of railroad employee injuries has long been a particular problem, and railroad labor organizations have frequently complained that harassment of employees who reported injuries is a common railroad management practice." *Araujo*, 708 F.3d at 159.

31.     Railroads are exempt from workers' compensation laws. Instead, railroads are liable to employees whose injuries are caused by the railroads' negligence. Thus, railroads have a motive to discourage employees from reporting the injuries they suffer, blame them for any injuries they nevertheless report, and manufacture a reason to terminate them.

32.     Railroads' motive to discourage employees from reporting the injuries they suffer, blame them for any injuries they nevertheless report, and manufacture a reason to terminate them

also includes that the agency responsible for enforcing railroad safety laws—the FRA—uses the number of days lost to reported injuries to determine where it should send its inspectors. *See*, *e.g.*, *Barati v. Metro-N. R.R. Commuter R.R. Co.*, 939 F. Supp. 2d 143, 148 (D. Conn. 2013).

33.     Defendants further ensures that supervisors have a personal motive to discourage employees from reporting the injuries they suffer, blame them for any injuries they nevertheless report, and manufacture a reason to terminate them by maintaining an incentive compensation plan whereby it pays its managers a yearly bonus based, in part, on the number of FRA-reportable injuries employees report (with fewer injury reports translating to higher bonuses).[1]

### DEFENDANTS' RETALIATION WAS PURSUANT TO ITS COMPANYWIDE PRACTICES AND POLICIES

34.     It is a common and companywide practice at Defendants to use their workplace rules, which are vague and could apply to most any situation, to justify retaliation against employees who report injuries.

35.     Despite these and other numerous FRSA violations, Defendants have not disciplined a single supervisor for retaliating against employees for engaging in FRSA-protected activity.

### CAUSES OF ACTION

36.     The FRSA prohibits railroad carriers from demoting, suspending, reprimanding, or in any other way discriminating against an employee for engaging in protected activity. 49 U.S.C. § 20109

---

[1] Defendants maintain such a compensation plan despite Congress having expressed concern as early as 2008 "that some railroad supervisors [have] intimidated employees from reporting injuries to the FRA, in part, because their compensation depended on low numbers of FRA reportable injuries within their supervisory area. *Araujo*, 708 F.3d 152, 161 n.7 (citing Hearings).

37.     Protected activity under the FRSA includes reporting an injury and being perceived as having reported an injury.

38.     Section 65.2-308 of the Virginia Code also prohibits employers from retaliating against employees for engaging in protected activity.

39.     Protected activity under § 65.2-308 includes filing a workers' compensation claim, regardless of whether the claim is meritorious.

40.     Adkinson engaged in protected activity under both statutes when he reported an injury via the workers' compensation claim he filed.

41.     Defendants knew Adkinson had engaged in protected activity when they terminated him.

42.     Adkinson's protected activity was a contributing factor in Defendants' decision to take the above-referenced adverse action.

43.     In fact, it was the sole cause.

## **REQUEST FOR RELIEF**

44.     Adkinson requests that the Court find Defendants acted in direct violation of the FRSA and Va. Code § 65.2-308.

45.     Adkinson further requests that the Court order Defendants to take the following actions:

- reinstate him;

- clear and/or expunge any record of misconduct by him regarding the incident described herein;

- pay to him an award for compensatory damages arising from loss of income (or potential loss of income) and benefits in an amount to be determined by the trier of fact;

- pay to him an award for emotional distress in an amount to be determined by the trier of fact;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award of the maximum amount allowed by statute for punitive damages.

46.     Adkinson further requests that the Court order judgment against Defendants for all other relief available under the FRSA and/or Va. Code § 65.2-308, and such other relief the Court deems just and equitable.

**PLAINTIFF'S COUNSEL**

March 12, 2026

s/ *Nicholas D. Thompson*
Nicholas D. Thompson (VA 92821)
Casey Jones Law Firm
323 N Washington Ave Ste 200
Minneapolis, MN 55401
Phone: (757) 477-0991
Email: nthompson@caseyjones.law