**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| Elexander Adkinson,<br><br>                                         Plaintiff,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>Norfolk & Portsmouth Belt Line Railroad Co.,<br><br>and<br><br>Norfolk Southern Railway Corp.,<br><br>                                         Defendants. | Case No. 2:26-cv-00071-RBS-LRL<br><br>**PLAINTIFF'S RESPONSE TO**<br><br>**DEFENDANT'S MOTION TO**<br><br>**DISMISS** |

**INTRODUCTION**

This case arises from the termination of a railroad employee after Defendants received a workers' compensation claim concerning a workplace injury. Plaintiff he worked for Norfolk & Portsmouth Belt Line Railroad Co. ("Belt Line"), a Norfolk terminal switching railroad, and that Belt Line was owned and operationally controlled by CSX Transportation, Inc. ("CSX") and Norfolk Southern Railway Corp. ("Norfolk Southern"), which also controlled Belt Line's supervision, rules, and termination decisions. When the workers' compensation filing was forwarded to Defendants, they accused him of failing to report the injury underlying that claim soon enough and then terminated him. The Amended Complaint asserts two retaliation claims arising from that sequence: Count I under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, and Count II under Virginia Code § 65.2-308.

1

The motions raise two distinct arguments. First, Belt Line argues Count I fails because a workers' compensation claim later forwarded to the railroad is not, as a matter of law, protected activity, *i.e.*, an act to "notify, or attempt to notify" the railroad of a work-related injury under 49 U.S.C. § 20109(a)(4). Second, all Defendants argue Count II fails because railroad employees are excluded from Title 65.2's compensation regime and because the Federal Employers' Liability Act ("FELA") supplies the exclusive remedy for railroad workplace injuries. Belt Line then adds a contingent jurisdictional argument: if Count I falls, it says no independent basis remains to keep Count II in federal court.

The first argument is clearly wrong. The FRSA protects lawful, good-faith acts "done, or perceived by the employer to have been done" to "notify, or attempt to notify" the railroad of a work-related personal injury. 49 U.S.C. § 20109(a), (a)(4). On the pleadings here, the workers' compensation filing was the means by which Plaintiff notified Defendants of the injury, or how Defendants perceived that he had done so, because Defendants treated that filing as the event that revealed an allegedly late-reported injury and used it to trigger discipline. A written filing that reaches the railroad and functions as the railroad's basis for saying "you should have reported this injury sooner" cannot be dismissed, at the pleading stage, as legally irrelevant to injury reporting under the FRSA.

The second argument presents a narrower and more difficult legal question. Plaintiff agrees the underlying workplace injury is not compensable through Virginia workers' compensation benefits and that any injury-compensation remedy lies, if at all, under FELA. But that does not answer the separate question Count II presents: whether Title 65.2's exclusion from compensation coverage also exempts railroads from the Act's distinct anti-retaliation provision when they fire an employee for filing a Title 65.2 claim. The Court should answer that question no. At a minimum,

2

however, Defendants should not be permitted to combine both arguments to create a no-protection zone in which the same filing is enough to expose Plaintiff to discipline, but not enough to count as protected notice under the FRSA and not enough to trigger any protection under Virginia law. The statutes should not be read together to produce that trapdoor result.

For these reasons, as more fully explored below, the motions to dismiss should be denied.

## FACTUAL BACKGROUND

Plaintiff worked in Norfolk for Belt Line. Am. Compl., Dkt.18, ¶ 4. Belt Line is a terminal switching railroad that connects traffic between Sewells Point and Portsmouth Marine Terminal in Virginia. *Id.*, ¶ 7. Belt Line is owned and operated by CSX and Norfolk Southern. *Id.*, ¶¶ 7, 10.

CSX and Norfolk Southern set work schedules and pay rates for Belt Line employees. *Id.*, ¶ 11. Officers of CSX and Norfolk Southern supervised Belt Line employees, made hiring and firing decisions, and required Belt Line employees to follow their policies. *Id.*, ¶¶ 12-14. Until the events at issue, those officers regarded Plaintiff as a model employee. *Id.*, ¶ 15.

On February 9, 2024, Plaintiff filed a workers' compensation claim under Virginia Code § 65.2. *Id.*, ¶ 16. That the filed claim was forwarded to Defendants. *Id.*, ¶ 17. Defendants responded by accusing him of violating a workplace rule because he had not reported the injury underlying the claim sooner. *Id.*, ¶ 17.

The resulting disciplinary hearing was conducted under the collective bargaining agreement applicable to craft employees. *Id.*, ¶ 18. The hearing process, however, is management-controlled, lacks ordinary procedural safeguards, and generally operates as a perfunctory mechanism for assigning blame to employees regardless of their actual responsibility. *Id.*, ¶ 19. Plaintiff's hearing was held on April 25, 2024, and Defendants terminated him thirty days later. *Id.*, ¶¶ 20-21.

Officers of each Defendant made the termination decision pursuant to CSX and Norfolk Southern policies. *Id.*, ¶ 22. Plaintiff, however, did not actually violate any rule requiring him to report the injury at issue. *Id.*, ¶ 23. Within 180 days of his termination, Plaintiff therefore filed a retaliation complaint with the Department of Labor, and after 210 days passed without a final order and without any bad faith on his part, he filed this action asserting claims under the FRSA and Virginia Code § 65.2-308. *Id.*, ¶¶ 24-27.

The underlying injury itself would be compensable, if at all, under FELA rather than Virginia's workers' compensation benefits scheme. *Id.*, ¶ 28. Defendants nevertheless retaliated against him because he filed the Virginia claim. *Id.*, ¶¶ 27-29. He therefore asserts one federal retaliation claim and one state retaliation claim arising from the same termination. *Id.*, ¶¶ 36-43.

## LEGAL STANDARD

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint, not the truth of Defendants' competing narrative. To survive dismissal, the complaint need only contain enough factual matter, accepted as true, to state a claim that is plausible on its face. The Court must read the complaint as a whole, draw reasonable inferences in Plaintiff's favor, and deny dismissal if the pleaded facts plausibly entitle Plaintiff to relief under a cognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Francis v. Giacomelli*, 588 F.3d 186, 192-93 (4th Cir. 2009).

That standard matters here because both motions ask the Court to choose Defendants' inference over the inference naturally arising from the pleadings. Plaintiff alleges not merely that he filed a claim and later lost his job, but that the claim reached Defendants, that Defendants treated it as revealing an allegedly late-reported injury, that they charged him on that basis, and that the asserted rule violation was not real. At this stage, the Court does not weigh that allegation against

4

Defendants' preferred explanation or decide whether Defendants' asserted rationale is genuine rather than pretextual.

To the extent Belt Line invokes Rule 12(b)(1), that argument is contingent on dismissal of Count I. The FRSA expressly authorizes a de novo district-court action if the Secretary of Labor has not issued a final decision within 210 days and the delay is not due to the employee's bad faith, and that jurisdiction exists without regard to the amount in controversy. 49 U.S.C. § 20109(d)(3). If Count I survives, the Court has original jurisdiction over that claim and supplemental jurisdiction over Count II because both claims arise from the same alleged retaliatory termination. 28 U.S.C. § 1367(a).

## ARGUMENT

Defendants' motions should be denied because they rely on a one-way use of the February 9 filing. On Defendants' own theory, that filing mattered enough to bring the injury to their attention, mattered enough to support a late-reporting charge, and mattered enough to set the disciplinary process in motion. But when Plaintiff invokes retaliation protections, Defendants say the very same filing did not count as injury notice under the FRSA and did not count as a protected filing under Virginia law. The Court should reject that attempt to make the filing operative only when it hurts Plaintiff and legally nonexistent when it protects him.

### A) COUNT I STATES A PLAUSIBLE CLAIM UNDER THE FRSA.

Count I presents the simpler issue, and Belt Line's argument fails on the face of the statute. The complaint alleges that Plaintiff filed a claim concerning a workplace injury, that the claim was forwarded to Defendants, and that Defendants then accused him of not reporting the injury identified in that filing soon enough. At the pleading stage, that is more than enough to allege that

the filing functioned as an attempt to notify Defendants of the injury, or at minimum that Defendants perceived it that way.

The FRSA prohibits a railroad carrier from discriminating against an employee if the discrimination is due, in whole or in part, to the employee's lawful, good-faith act "done, or perceived by the employer to have been done" to "notify, or attempt to notify" the railroad or the Secretary of Transportation of a work-related personal injury. 49 U.S.C. § 20109(a), (a)(4). The statute incorporates AIR-21's burden-shifting framework and allows suit in district court once the administrative prerequisites are satisfied. At the pleading stage, Plaintiff therefore need only plausibly allege protected activity, an unfavorable personnel action, and a causal link between the two; where, as here, the complaint alleges the filing reached Defendants and immediately triggered discipline, employer knowledge is built into the pleaded sequence itself. 49 U.S.C. § 20109(a), (d)(2)-(3); *LeDure v. BNSF Ry. Co.*, ARB No. 13-044, ALJ No. 2012-FRS-20, 2015 WL 4071574, at *4 (ARB June 2, 2015).

Plaintiff has alleged those elements. He alleges protected activity because he filed a claim arising from a workplace injury and that claim was forwarded to Defendants. *Supra*, 3. He alleges unfavorable personnel action because Defendants accused him of a rule violation, required him to attend a disciplinary hearing, and terminated him. *Id.,* ¶¶18-19. And he alleges causation because the asserted basis for discipline was not some independently discovered misconduct; it was the supposedly late reporting of the very injury disclosed in the February 9 filing. *Id.,* ¶16.

Though it need not, the complaint also pleads why Defendants' stated reason is pretextual. Plaintiff alleges that the injury at issue was not something he had to report under Defendants' workplace rules and that he therefore violated no reporting rule at all. *Supra*, 3. He further alleges that the hearing process is management-controlled, lacks ordinary safeguards, and functions as a

perfunctory mechanism to assign blame to employees regardless of their actual responsibility. *Id.,*¶ 19. Read together, those allegations plausibly assert that Defendants manufactured a late-reporting charge only after the February 9 filing reached them and then used a one-sided disciplinary process to convert protected injury notice into a discharge.

The case law confirms that Belt Line's categorical rule is wrong. *LeDure v. BNSF Ry.* which Belt Line cites, predates the current text of § 20109(a)(4) and did not address the present statutory language protecting acts to "notify, or attempt to notify" a railroad of a work-related personal injury. By contrast, in *LeDure*, the Administrative Review Board held that even though the FRSA does not expressly protect FELA litigation as such, the additional notice provided in the course of that litigation was protected where it gave the railroad "more specific notification of the nature and extent" of the employee's work-related injury. 2015 WL 4071574, at *4. And the ARB specifically explained that retaliation for "later notifications of the same injury is just as unlawful as retaliation for the initial notice." *Id.,*¶ 4. That is directly helpful here, where Plaintiff alleges the February 9 filing was the communication that reached Defendants and caused them to claim the injury had been reported too late.

The causation authorities point the same way. In *Henderson v. Wheeling & Lake Erie Railway*, the ARB held that injury reporting and later discipline may be "inextricably intertwined," creating a presumptive inference of causation, especially where the employer investigates and disciplines the employee for alleged untimely reporting only because the protected report was made.[1] *Henderson v. Wheeling & Lake Erie Ry.*, ARB No. 11-013, ALJ No. 2010-FRS-12, slip op.

---

[1] Beginning with *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786 (8th Cir. 2014), in which the court wrongfully held that FRSA plaintiffs must demonstrate animus, a circuit split developed regarding whether an "inextricably intertwined" theory of causation is sufficient. That split was resolved in plaintiffs' favor by *Murray v. UBS Sec., LLC*, 601 U.S. 23, 144 S. Ct. 445, 217 L. Ed. 2d 343 (2024). The Court affirmed that plaintiffs in cases brought under statutes incorporating the AIR-

at 12-14, 2012 WL 5391422, at *8 (ARB Oct. 26, 2012). The ARB relied there on *DeFrancesco*, where it held that if the employee had not reported his injury, the employer would not have conducted the investigation that produced the discipline. *Id.,* ¶ 8 Here, Plaintiff alleges precisely that sort of sequence: Defendants did not first uncover unrelated misconduct and then happen to learn of the injury; according to the complaint, the February 9 filing is what set the late-reporting accusation in motion. *Henderson* warns specifically against treating "untimely filing of medical injury" as an "independent" ground for termination where doing so could "eviscerat[e] protection for injured employees." *Id.,* ¶ 8.

Belt Line's contrary arguments do not justify dismissal. Its principal point is that the complaint alleges only a workers' compensation claim later forwarded to Defendants, not notice by the employee to the railroad. But § 20109(a)(4) protects not only completed notice, but an "attempt to notify," and § 20109(a) separately protects acts "done, or perceived by the employer to have been done." 49 U.S.C. § 20109(a), (a)(4). The complaint alleges Plaintiff filed the claim, that the claim reached Defendants, and that Defendants treated it as the operative disclosure of the injury by accusing Plaintiff of not reporting that same injury sooner. *Supra*, 7. Nothing in the statute requires that the first protected notice be verbal, in-person, or hand-delivered by the employee to management. And the *McKay* case Belt Line cites shows only that a direct oral report is one way to plead a claim, not that it is the exclusive way.

Count I therefore states a claim. Because Plaintiff also alleges that he filed with the Department of Labor within 180 days, that more than 210 days passed without a final order, and that the delay was not due to his bad faith, this Court has original jurisdiction over Count I under

---

15 (as opposed to the *McDonnel-Douglas*) burden-shifting framework need only prove that their protected activity contributed in some way to the adverse action, after which the burden shifts to the defendant to disprove retaliation.

§ 20109(d)(3). Belt Line's contingent jurisdictional argument fails for that reason alone, and Count II remains properly before the Court under § 1367(a) so long as Count I survives.

**B)  COUNT II PRESENTS A NARROWER LEGAL QUESTION AND SHOULD NOT BE DISMISSED WITH PREJUDICE.**

Count II presents the harder issue, but it is also the narrower one. Plaintiff does not dispute that Virginia workers' compensation benefits are unavailable for the underlying railroad injury itself and that FELA governs the substantive remedy for workplace injury. The question here is different: whether those compensation-coverage limits also exempt railroads from Virginia's separate anti-retaliation rule when they fire an employee for filing a Title 65.2 claim. That question should be answered no.

Virginia Code § 65.2-308(A) provides that "[n]o employer or person shall discharge an employee solely because the employee intends to file or has filed a claim under this title," and it creates one express exception: "[t]he discharge of a person who has filed a fraudulent claim is not a violation of this section." Virginia courts applying § 65.2-308 have repeatedly emphasized that employer motive ordinarily is proved by circumstantial evidence and that the employer's true reason for discharge is often outside the employee's direct knowledge. *Mullins v. Virginia Lutheran Homes, Inc.*, 253 Va. 116, 119-20, 479 S.E.2d 530, 532-33 (1997); *Charlton v. Craddock-Terry Shoe Corp.*, 235 Va. 485, 489-90, 369 S.E.2d 175, 177-78 (1988). *Jordan v. Clay's Rest Home, Inc.* adds that timing and generalized awareness of injury reporting, without more, do not establish discharge solely because of a claim. 253 Va. 185, 193-94, 483 S.E.2d 203, 207-08 (1997). And *Cooley v. Tyson Foods, Inc.* shows that a retaliation claim fails when the employer conclusively establishes a legitimate, non-pretextual reason for discharge after a thorough investigation. 257 Va. 518, 523-24, 514 S.E.2d 770, 772-73 (1999).

If § 65.2-308 applies at all to a railroad employee who filed a Title 65.2 claim, the Amended Complaint adequately pleads retaliatory motive. Plaintiff alleges an actual filing date—February 9, 2024—not merely an injury or an unspoken intention to complain. *Supra*, 3. He alleges the claim was forwarded to Defendants, that Defendants then accused him of not reporting the injury underlying that claim soon enough, that they convened a disciplinary hearing, and that they terminated him. *Id.,* ¶ 17. He also alleges he violated no reporting rule at all. *Id.,* ¶ 17. That is not merely timing plus employer awareness. It is a direct pleaded chain from filing, to accusation, to hearing, to discharge.

That distinction matters under Virginia precedent. In *Jordan*, the Supreme Court of Virginia stressed that the record did not show when the claim had been filed and that evidence of injury, generalized reporting, and discharge "without more" could not establish that the plaintiff was fired solely because she intended to file a claim. 253 Va. at 193-94. Here, by contrast, the complaint identifies the filing date and alleges that Defendants' response was keyed specifically to the filed claim itself: they allegedly disciplined Plaintiff because the injury described in the filing had not been reported sooner. Am. Compl., Dkt. 18, ¶¶ 16-17. That is precisely the sort of "more" *Jordan* found missing there. And under *Mullins* and *Charlton*, the employer's true motive remains a fact question where the surrounding circumstances plausibly support retaliatory intent.

The text of § 65.2-308 also supports Plaintiff's position. The statute does not limit protection to successful claims or compensable claims; it speaks of a "claim under this title" and then expressly removes only fraudulent claims from protection. Va. Code § 65.2-308(A). That structure strongly suggests the statute focuses on the employer's retaliatory response to the filing, not on whether the claimant ultimately prevails on the merits of benefits. Plaintiff's pleading fits

10

that design: he alleges Defendants retaliated because he filed the claim, not because he recovered

compensation under it.

Defendants' contrary arguments are substantial, but they do not compel dismissal with

prejudice. Their best textual point is that Virginia Code § 65.2-101 excludes railroad workers from

Title 65.2's definition of "employee." They are also correct that *Winfield* makes FELA the

exclusive source of compensation rules for personal injuries suffered by railroad employees in

interstate commerce. Plaintiff does not dispute either proposition as applied to compensation for

the underlying injury. But Count II does not seek workers' compensation benefits for the injury

itself. It seeks relief for a later retaliatory discharge allegedly imposed because Plaintiff filed a

Title 65.2 claim. Section 65.2-101 preserves railroad employees' substantive injury remedies under

FELA; it does not expressly say that a railroad may use a Title 65.2 filing as the reason for

discharge while remaining immune from § 65.2-308's anti-retaliation command. Va. Code § 65.2-

101(2)(i)-(j); *New York Cent. R.R. Co. v. Winfield*, 244 U.S. 147, 150-53 (1917).

That distinction between the underlying injury and the later retaliatory discharge is

consistent with the Fourth Circuit's reasoning in *Lee v. Norfolk Southern Railway Co. Lee* explains

that the same factual event can involve different "allegedly unlawful act[s]" because an act

becomes unlawful only by reference to the law it violates. 802 F.3d 626, 636 (4th Cir. 2015). Here,

the workplace injury and the later termination are not the same alleged wrong. One concerns

substantive compensation for physical injury; the other concerns retaliation for filing a claim. That

is also why the FRSA's own savings clauses matter: Congress expressly provided that nothing in

§ 20109 "preempts or diminishes" other state or federal retaliation safeguards and that nothing in

the section diminishes an employee's other rights and remedies. 49 U.S.C. § 20109(g)-(h). Those

provisions do not themselves create Count II, but they reinforce the common-sense point that rail-

safety and rail-injury statutes should not be read together to create a no-remedy zone for retaliation by implication.

Most importantly, Defendants cannot fairly combine their two arguments into a single trapdoor. If, as Belt Line says, the February 9 filing does not count as reporting an injury under the FRSA, and if, as all Defendants say, the Virginia anti-retaliation provision also does not apply because railroads are outside compensation coverage, then the consequence would be this: a railroad could wait until a claim form reached it, use that form to accuse the employee of late reporting, and then deny that the form has any legal significance anywhere once the employee sues for retaliation. The Court should not read either statute, much less both together, to authorize that result on these pleadings.

Count II therefore should remain in the case.

## CONCLUSION

For those reasons, Plaintiff respectfully requests that the Court deny Defendant Norfolk & Portsmouth Belt Line Railroad Co.'s Motion to Dismiss and deny Defendants CSX Transportation, Inc. and Norfolk Southern Railway Corp.'s Partial Motion to Dismiss. Count I states a claim under the FRSA, Belt Line's contingent jurisdictional challenge therefore fails, and Count II should not be dismissed with prejudice on Defendants' no-protection theory.

April 9, 2026.                                          **PLAINTIFF'S COUNSEL**

s/ *Nicholas D. Thompson*
Nicholas D. Thompson (VA 92821)
Casey Jones Law Firm
323 N Washington Ave Ste 200
Minneapolis, MN 55401
Phone: (757) 477-0991
Email: nthompson@caseyjones.law